IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                                   :
PAUL C. GBENOBA
                                   :

   v.                              :  Civil Action No. 2003-2231

                                   :

MONTGOMERY COUNTY DEPARTMENT
OF HEALTH AND HUMAN SERVICES       :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are (1) the motion of Plaintiff Paul C. Gbenoba for leave to amend his complaint, and (2) the motion of Defendant Montgomery County Department of Health and Human Services ("DHHS") for summary judgment pursuant to Fed.R.Civ.P. 56.  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the court grants both motions.

**I.  Background**

Plaintiff, an African-American of Nigerian descent and an employee of Defendant, alleges retaliatory failure to promote, denial of leave, and harassment constituting a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Plaintiff filed two race discrimination complaints with the Montgomery County Human

Relations Commission ("HRC") and the Equal Employment Opportunity Commission ("EEOC"), both of which were adjudicated in favor of DHHS by the federal court. *See Gbenoba v. Montgomery County Dep't. of Health & Human Servs.*, 209 F.Supp.2d 572 (D.Md. 2002) (summary judgment for DHHS) ("*Gbenoba I*"); case no. 01-cv-03540-WDQ (jury verdict for DHHS) ("*Gbenoba II*"). In a third HRC/EEOC complaint now properly before this court, Plaintiff alleges that because he filed those complaints, his supervisors gave promotions for which he applied to less qualified Caucasian employees; altered the terms, conditions and privileges of his employment by revoking approval for leave, denying leave requests, and denying requests to "carry over" unused leave to the following year; included misleading comments on his performance evaluation but refused to revise the evaluation record; subjected him to "excessive oversight, review, and surveillance;" and falsely accused him of misconduct. *See* paper no. 29, ex. 1 (Plaintiff's Third EEOC Complaint). Plaintiff seeks an order enjoining Defendant from engaging in racial discrimination and ordering Defendant to institute policies to provide equal employment opportunities regardless of race; back pay with interest; unspecified compensatory damages, including medical expenses and compensation for "emotional pain and suffering, depression,

2

anxiety, inconvenience, loss of enjoyment of life, and humiliation;" and costs.

The parties have conducted discovery. Plaintiff moves for leave to amend his complaint to name Montgomery County as the defendant, rather than DHHS, the named defendant in the complaint. Defendant moves for summary judgment.

## II.  Standard of Review

### A.  Leave to Amend

After a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend shall be given freely absent bad faith, undue prejudice to the opposing party, or futility of amendment. *United States v. Pittman,* 209 F.3d 314, 317 (4th Cir. 2000) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

### B.  Summary Judgment

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly

3

exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1987). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion

for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997).   There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. Analysis

### A.   Plaintiff's Motion for Leave to Amend

Plaintiff moves to amend only so that his complaint will reflect the correct identity of Defendant.  The defendant named in his complaint, DHHS, is a subordinate agency of Montgomery County, the proper defendant here, and is not capable of being sued.  There is no prejudice to Defendant in making this change. The court will grant the motion for the sake of correcting the docket to reflect the party that has been defending this action from its inception.

### B.   Defendant's Motion for Summary Judgment

The court notes, as an initial matter, that in his complaint and in his response to Defendant's motion for summary judgment, Plaintiff at times veers into arguing that employees of Defendant discriminated against him not only in retaliation for his EEOC activity, but also on the basis of his race and/or national origin.  A claim for race or national origin discrimination, however, is not properly before this court.  The court may hear only those claims raised in the EEOC complaint or those "reasonably related" to that complaint and which "can be expected to follow from a reasonable administrative investigation." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir. 2000) (citing *Chisholm v. United States Postal Serv.,* 665 F.2d 482, 491 (4th Cir. 1981)); *see Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.").  Here, in the EEOC complaint giving rise to this action, Plaintiff stated only a claim for retaliation.  On the EEOC complaint form, in the section captioned "DISCRIMINATION BASED ON (Check appropriate box(es).)," Plaintiff checked only the box labeled "RETALIATION," and did not check the "RACE" and "NATIONAL

6

ORIGIN" boxes. *See* Plaintiff's Third EEOC Complaint.  In his written description of the particulars of the case, Plaintiff alleged only that "[i]n retaliation for filing prior charges . . . some terms and conditions of my employment have been changed" and that "I believe I am being discriminated against in the above actions in retaliation for my participation in activities protected by Title VII . . . ." *Id.*  While it is true that a retaliation claim not raised in an EEOC complaint may be found to be reasonably related to an underlying EEOC complaint alleging discrimination, and may therefore be raised for the first time in federal court, *see Nealon v. Stone,* 958 F.2d 584, 590 (4th Cir. 1992), the reverse is not necessarily true.  *See, e.g., McGaw v. Biovail Pharm., Inc.,* 300 F.Supp.2d 371, 373 (D.Md. 2004) (rejecting discrimination claims as "not reasonably related" to EEOC retaliation complaint) ("Permitting a plaintiff to proceed on discrimination claims not alleged in the initial EEOC complaint 'would eviscerate the administrative filing requirement altogether by depriving the employer of adequate notice and resulting in a failure to investigate by the responsible agency.'") (quoting *Evans,* 80 F.3d at 963) (other internal quotation marks omitted); *Robinson v. Rubin,* 77 F.Supp.2d 784, 792 (S.D.Tex. 1999) ("[Plaintiff's] claims for race and sex discrimination would not have fallen within the

scope of a reasonable EEOC investigation into [his] retaliation claims."); *but see, e.g., Causey v. Balog,* 929 F.Supp. 900, 908-09 (D.Md. 1996) (finding plaintiff's discrimination claims reasonably related to EEOC retaliation complaint because "[a]ny investigation of a charge that an employee was retaliated against for filing a previous charge of discrimination would reasonably encompass any further discrimination in addition to purely retaliatory acts; indeed, it is difficult to draw a practical distinction between the two conceptually different motives for taking adverse action against an employee."). Here, Plaintiff did not avail himself of ample opportunity to claim race or national origin discrimination (as he had done before). The court therefore addresses only Plaintiff's retaliation claims.[1]

To prove retaliation, Plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action at the hands of Defendant; and (3) Defendant took the adverse action because of the protected activity. *Spriggs v. Diamond Auto Glass,* 242 F.3d at 190 (citing *Gibson v.*

---

[1]    In any event, any claim for race or national origin discrimination on the basis of the facts in evidence would also fail to survive summary judgment, as Plaintiff consistently fails to prove either discriminatory or retaliatory intent in any of Defendant's actions.

8

*Old Town Trolley Tours of Washington, D.C., Inc.,* 160 F.3d 177,

180 (4th Cir. 1998)).  As the Fourth Circuit recently reiterated:

> A plaintiff lacking direct evidence of retaliation may
> utilize the *McDonnell Douglas Corp. v. Green,* 411 U.S.
> 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973),
> framework to prove a claim of retaliation. *Williams
> v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.
> 1989).  In the *McDonnell Douglas* framework, the
> plaintiff must first establish a *prima facie* case of
> retaliation, whereupon the burden shifts to the
> employer to establish a legitimate nonretaliatory
> reason for the action.  If the employer sets forth a
> legitimate, non-retaliatory explanation for the
> action, the plaintiff then must show that the
> employer's proffered reasons are pretextual or his
> claim will fail.  More specifically, the plaintiff can
> prove pretext by showing that the "explanation is
> 'unworthy of credence' or by offering other forms of
> circumstantial evidence sufficiently probative of
> [retaliation]." *Mereish v. Walker,* 359 F.3d 330, 336
> (4th Cir. 2004) (quoting *Tex. Dep't of Cmty. Affairs v.
> Burdine,* 450 U.S. 248, 256, 67 L. Ed. 2d 207, 101 S.
> Ct. 1089 (1981)).

*Price v. Thompson,* 380 F.3d 209, 212 (4th Cir. 2004) (brackets in

original).  "Although intermediate evidentiary burdens shift

back and forth under this framework, 'the ultimate burden of

persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with

the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530

U.S. 133, 143 (2000) (quoting *Burdine,* 450 U.S. at 253).  Once

the defendant has established a legitimate nonretaliatory reason

for the action, a plaintiff can use evidence establishing his

*prima facie* case, and inferences properly drawn therefrom, to

support a showing that the defendant's proffered reason is not believable. *See Reeves,* 530 U.S. at 143. Even if the plaintiff makes that showing, "this does not automatically create a jury question, but it *may* do so." *Rowe v. Marley Co.,* 233 F.3d 825, 830 (4th Cir. 2000). "Even when a plaintiff demonstrates a *prima facie* case and pretext, his claim should not be submitted to a jury if there is evidence that precludes a finding of discrimination, that is if 'no rational factfinder could conclude that the action was discriminatory.'" *Id.* (quoting *Reeves,* 530 U.S. at 148) (italics in original).

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Reeves,* 530 U.S. at 148-49.

The *McDonnell-Douglas* framework is not meant to be applied in a "rigid, mechanized or ritualistic" manner, *Furnco. Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978). Rather, it is "merely a means to fine-tune the presentation of proof and, more importantly, to sharpen the focus on the ultimate question -- whether the plaintiff successfully demonstrated that the defendant intentionally [retaliated] . . . ." *Ennis v. Nat'l*

*Ass'n of Bus. & Educ. Radio,* 53 F.3d 55, 59 (4th Cir. 1995) (citing cases).

### 1. Failure to Promote

Plaintiff complains that when he applied for two promotions, Defendant promoted less qualified Caucasian candidates instead. Plaintiff alleges this constituted retaliatory failure to promote.

To establish a *prima facie* case of discriminatory failure to promote under Title VII, Plaintiff must show that (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 544-45 (4th Cir. 2003) (citing *Brown v. McLean,* 159 F.3d 898, 902 (4th Cir. 1998)).

Plaintiff has made a *prima facie* case of retaliatory failure to promote because he applied for and was qualified for each promotion, engaged in protected activity and was denied promotion during the period when an EEOC complaint was pending. Under *McDonnell-Douglas*, the burden shifts to Defendant to show a legitimate, nonretaliatory reason for failing to promote Plaintiff. Defendant avers that, of those who applied for each position, only candidates rated "well qualified" -- a group

11

which, Defendant stipulates, included Plaintiff in both
instances -- were interviewed for the positions. Those
candidates were then scored separately by each member of a
promotion panel. The scores were tallied, and the candidate
with the highest total score was promoted. *See* paper no. 29,
ex. 2 (Affidavit of Kathryn Barrett). "[A]udit scores,
interview[s, and] good interpersonal skills . . . are
legitimate, nondiscriminatory reasons for not promoting" a
candidate. *Wise v. Gallagher Basset Servs.*, 228 F.Supp.2d 671,
675 (D.Md. 2002). Here, in both instances, scoring was based on

> presentation of application and supporting documents;
> experience and knowledge of programs; the content and
> sincerity with which the candidates responded to
> questions in the structured interview; the timeliness
> with which candidates presented requested information,
> including letters of reference, evaluations and
> current performance plans; and the content of the
> letters of reference, evaluations and current
> performance plans to the extent that they indicated at
> least a satisfactory performance and adherence to the
> stated goals of the Department.

Paper no. 29, ex. 2, at 2-3, 4-5 (Deposition of Kathryn
Barrett). These criteria are plainly legitimate and
nonretaliatory.

Pursuant to the *McDonnell Douglas* framework, then, Plaintiff
must "demonstrate that the proffered reason was not the true
reason for the employment decision." *Burdine,* 450 U.S. at 256.
In *Wise*, the court elaborated:

When an employer states that an employee was not promoted because other candidates were more qualified, a plaintiff . . . can prove that the employer's explanation is false in two ways. [*Gbenoba I,* 209 F.Supp.2d at 577]; *see also Dennis v. Columbia Colleton Med. Ctr.,* 290 F.3d 639, 649 n.4 (4th Cir. 2002). First, a plaintiff can show that she was actually more qualified than the promoted employee. [*Gbenoba I*], 209 F.Supp.2d at 577; *see also Dennis,* 290 F.3d at 649 n.4. Second, a plaintiff can show that the employer's articulated reasons were not the actual reasons relied on, but rather created as a "post hoc rationalization for the decision." [*Gbenoba I*], 209 F.Supp.2d at 577; *see also Dennis,* 290 F.3d at 649 n.4.

228 F.Supp.2d at 675. Plaintiff has done neither.

Plaintiff cannot show that he had qualifications superior to those who were promoted. Plaintiff alleges, without substantiation and against the evidence of the panelists' scores, that he was more qualified than the promoted candidates. Plaintiff submits as evidence his application for promotion to Income Assistance Program Supervisor ("IAPS"), as well as that of Yvonne Carbaugh, who was awarded that promotion. These applications alone, however, cannot prove that Plaintiff was more qualified. Here, beyond having an application rated "well qualified," the qualifications necessary to win promotion were those measured and scored by the panel during the interview process. (The panelists' scores have not been submitted into evidence.) As to the second promotion, Plaintiff asserts in his affidavit that the promoted candidate, Maria Paganini, "didn't

have the qualifications that were listed for the position,"
paper no. 31, ex. 2, at 27 (Deposition of Paul Gbenoba at 101),
but submits no evidence showing either what qualifications, if
any, were advertised as required for the position or whether Ms.
Paganini met those advertised qualifications.

Plaintiff also cannot show that Defendant's reasons for
promoting others were "post hoc rationalizations."  Plaintiff
has submitted no evidence to show that the promoted candidates'
scores were in any way inaccurate reflections of their
qualifications for the jobs.  As evidence of pretext, Plaintiff
contends in his deposition that he and Kathryn Barrett, who was
on both promotion panels, had the following telephone encounter,
after the first promotion was awarded and at about the time that
the second promotion opportunity was first advertised:

> [Plaintiff]: Immediately after we filed the class, the
> group B or complaint, after I had been sent an
> accounting I believe that she became aware of it.  She
> had called me.
>
> [Counsel]: What did she say to you?
>
> [Plaintiff]: She was screaming at me.
>
> [Counsel]: What did she say?
>
> [Plaintiff]: Some comment to the effect I don't care
> what education you people have or something like that
> and hung up.

Deposition of Paul Gbenoba, at 94.  In a somewhat analogous
situation, however, this court stated:

> In this case, Plaintiff alleges that during a meeting in [defendant] Lacer's office on June 23, 2000, Lacer yelled "that's what I would expect from a Jew!" and that Plaintiff was terminated by the Board on January 9, 2001.  . . .  "Derogatory remarks may constitute direct evidence of a discriminatory attitude in the workplace." *Hill v. Lockheed Martin Logistics Management, Inc.,* 314 F.3d 657, 665 (4th Cir. 2003).  "To prove discriminatory animus, the derogatory remark cannot be stray or isolated . . . .'" [*Brinkley v. Harbour Rec. Club,* 180 F.3d 598, 608 (4th Cir. 1999)] (citation omitted). . . .
>
> It is possible that Lacer's remark, though its intended meaning is not entirely clear, constitutes direct evidence of Lacer's discriminatory animus toward members of the Jewish religion in general and Plaintiff in particular.  However, the remark appears to be an isolated event; the record reflects that Lacer uttered it only once.

*Fairclough v. Bd. of County Comm'rs,* 244 F.Supp.2d 581, 587-88 (D.Md. 2003).  Here, the meaning and intended subject(s) of Ms. Barrett's remark are even more unclear.  Even assuming *arguendo* that the comment was made and that it was indicative of racial animus and/or an intent to retaliate, it is a single, isolated comment, and as such is insufficient to constitute evidence of retaliatory motive.  Plaintiff also alleges, without evidence, that Ms. Barrett and another member of both panels, Frances McNeill, were "directly involved" in both EEOC complaints, paper no. 31, at 13.  However, neither those complaints, nor the respective ensuing lawsuits, name or refer to either Ms. Barrett or Mrs. McNeill.  *See* paper no. 36, exs. 1-4 (first and second EEOC complaints; No. S00-CV-3163, Amended Complaint; and No.

15

S01-CV-3540, Complaint).  The mere fact that Barrett and McNeill were aware of the EEOC complaints at the time they sat on the promotion panels is insufficient evidence to avoid summary judgment in light of Plaintiff's failure to attain the highest score from either of the panels.  *Accord Williams,* 871 F.2d at 459 (no retaliatory discharge where "[a]side from the fact that at the time she was fired her superiors had knowledge that she had filed a discrimination charge, she presented no evidence to support her claim other than her own assertions" because, in light of evidence of a legitimate nondiscriminatory reason, "no reasonable trier of fact could conclude that retaliation figured in her dismissal.").

Plaintiff presents no other evidence of retaliatory motive on the part of any other participant in the promotion process, nor any other evidence of pretext.  Plaintiff nonetheless argues that the court should view his allegations "as a whole," referring, it seems, to his other allegations against Mrs. McNeill.  As will be explained *infra,* however, the court finds no issues of triable fact with regard to any of Plaintiff's other allegations either.  In short, as before, "[P]laintiff's only evidence of pretext is found in his unsupported and self-serving assertions of superior qualifications, which simply cannot generate a triable issue."  *Gbenoba I,* 209 F.Supp.2d at

578 (citing *Evans,* 80 F.3d at 960).  Accordingly, the court will grant summary judgment as to Plaintiff's failure to promote claim.

### 2.  Denial of Leave

In response to Defendant's interrogatory asking that he "[s]tate all bases for your allegations . . . that your approved leave was revoked, you were denied leave, and you were denied a request to carry over leave," Plaintiff stated:

> I submitted a request for annual leave on March 1, 2002; the leave was to begin November 13, 2002.  DHHS still had not approved my request as of November 13, 2002.  Previous requests for leave in 2000 and 2001 had only been partially approved.  My supervisor then denied my subsequent request to carry-over the unapproved portions to the following year.  This denial result in my losing the unused leave. Subsequent requests for even minimal amounts of leave (e.g., one-half day) have been denied.

Paper no. 29, ex. 4 ("Plaintiff's Answers"), at no. 2.

While the court has found no cases expressly stating the required elements of a *prima facie* case of retaliatory denial of leave, they are easily inferred by analogy to other Title VII actions.  Plaintiff must show that (1) Defendant provided leave to its employees; (2) Plaintiff was eligible for leave; (3) Plaintiff applied for leave; and (4) Plaintiff was not granted leave under circumstances giving rise to an inference of retaliation.  *Accord Bryant,* 333 F.3d at 544-45; *Thompson v.*

*Potomac Elec. Power Co.*, 312 F.3d 645, 649-650 (4th Cir. 2002) (to establish *prima facie* case of discriminatory denial of training, plaintiff must show that "(1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination.").

It is undisputed that Plaintiff's request for six weeks of leave beginning November 13, 2002, was granted on November 14, 2002.  Plaintiff therefore complains that (1) his request was not timely granted; (2) prior requests for leave in 2000 and 2001 were only partially approved; (3) his request for "carry-over" of unused leave was denied; and (4) subsequent requests for "minimal amounts of leave" have been denied.  The court addresses each in turn.

### *Delayed approval for leave in November 2002*

Plaintiff fails to prove a *prima facie* case for retaliatory denial of his requested leave in November and December 2002. Plaintiff engaged in a protected activity, but has not established an actionable adverse employment action.  Viewing the evidence in the light most favorable to Plaintiff, he applied in March for the leave; was told that the department policy was not to approve holiday (i.e., end of year) leave

18

before September; prematurely provided pay stubs, in June and again in August, to show he had accrued the necessary hours; was told by Mrs. McNeill on November 6 that he needed to substantiate that he had enough leave hours by showing her a recent pay stub; and was finally approved on November 14.  On these facts, Plaintiff is unable to show that he was denied leave.  If Plaintiff had complied with Mrs. McNeill's request for his pay stub on or after November 6, he would not have lost any of his leave time; as soon as he did substantiate his accrued hours, he was granted his leave.  That requirement was not onerous, and Plaintiff's failure to comply before his leave was to begin does not render the requirement an adverse employment action.

Plaintiff also complains that because his leave was not approved until November, he had to cancel travel plans. Plaintiff has not presented any evidence of those plans, nor of any cost incurred as a result of having to cancel them. Plaintiff also has not suggested that Defendant knew of his travel plans.  Even assuming *arguendo* that the delay constituted an adverse employment action, Defendant has offered a legitimate, nonretaliatory reason for it, namely, the department policy that holiday leave not be approved before September, and that "part of what we have to do is coordinate our leave with

the rest of the office and I can't just give people leave and disregard the effect on the whole office, so that takes some time to coordinate that." McNeill Deposition at 87.  Plaintiff has failed to offer any evidence that this reason was pretextual, and therefore fails to satisfy his burden under *McDonnell-Douglas*.

### Denial of leave requests in 2000 and 2001

Plaintiff claims he was denied leave requests in 2000 and 2001.  Claims relating to incidents in those years, however, cannot be addressed in this lawsuit, as the underlying EEOC complaint alleges retaliation only on or after February 15, 2002.  *See* Plaintiff's Third EEOC Complaint (indicating discrimination took place between February 15, 2002 and January 21, 2003).  Even if the court could address those claims, Plaintiff has produced no evidence that he was ever denied leave during those years, or even stated the specific date(s) for which he requested but was denied leave during those years.  He has therefore failed to prove any adverse employment action, and thus failed to prove a *prima facie* case for retaliatory denial of leave in 2000 and 2001.


### Denial of "carry-over"

In his deposition, Plaintiff admits his request for "carry-over" from 2002 to 2003 was approved, and explains that his interrogatory answer refers to his request that 69.9 unused hours from 2001 be carried over into 2002.  *See* Gbenoba Deposition at 13-14.  Plaintiff's evidence shows that he requested this carry-over on February 1, 2002, and Plaintiff's handwritten annotation states that it was denied on February 4, 2002.  *See* paper no. 31, ex. 6.  It thus occurred before the period during which Plaintiff alleged retaliation in his EEOC complaint, and is therefore not actionable in this case.

Even if this denial of carry-over had occurred in the appropriate time period, Plaintiff's claim would fail because he has failed to prove a *prima facie* case of retaliation. Plaintiff has not entered into evidence the policy used to determine "carry-over" approval, nor any document explaining (or not explaining) the rejection, nor any evidence reflecting whether any other employees have been denied or granted a "carry over," nor any other evidence suggesting that he was entitled to the carry-over leave.  The claim therefore fails.

### *Denial of requests for "minimal amounts of leave"*

In his answer to Defendant's interrogatories, Plaintiff does not specify which "minimal" requests were denied.  In his response to Defendant's motion for summary judgment, however,

21

Plaintiff directs the court without comment to exhibits 4 and 8. In doing so, Plaintiff seems to allege that he was not granted leave for July 15-18, 2003 (ex. 8), and was granted leave for July 29, 2004 only after the date had already passed (ex. 4). Defendant need not even respond to these allegations, because they were not included in Plaintiff's complaint, which states only that he was denied leave "in December 2001, February 2002, March 2002, and October through November 2002," Complaint at ¶ 11(b), or in his answers to interrogatories, and because, again, they fall outside the time period during which Plaintiff alleges retaliation.  Even so, Defendant, in response, provides approved leave request forms for July 16-18 that were submitted prior to the ex. 8 request.  *See* paper no. 36, ex. 6.  There is, in fact, no evidence that Plaintiff was denied any leave in 2003 or 2004, other than his own allegation (which is contradicted by Mrs. McNeill's deposition, *see* McNeill Deposition at 128 ("Q: Since you have been Mr. Gbenoba's supervisor, have you ever denied him any leave?  A: No.  I can't recall any.")).  Even taking as true Plaintiff's assertion that he was denied leave for July 15, 2003 and effectively denied for July 29, 2004, however, Plaintiff has shown no actionable adverse employment action.  "An action that merely causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of her employment, is

not an adverse employment action." *Spriggs v. Public Serv. Comm'n of Md.,* 197 F.Supp.2d 388, 393 (D.Md. 2002). Here, even on Plaintiff's version of the facts, Plaintiff's accrued leave was not revoked; he was simply not allowed to take leave on two particular days.  This may have inconvenienced Plaintiff, but does not, in itself, constitute an adverse employment action. *See Allen v. Rumsfeld,* 273 F.Supp.2d 695, 706 (D.Md. 2003) (suggesting that denial of leave constitutes adverse employment action only if resulting in loss of pay); *see also Griffin v. Potter,* 356 F.3d 824, 829 (7th Cir. 2004).

For all these reasons, the court will grant Defendant's motion for summary judgment as to Plaintiff's claims for retaliatory denial of leave.

### 3.  Hostile Work Environment

Plaintiff contends he was subject to various retaliatory hostilities at work, alleging that Defendant denied, delayed, or otherwise impeded Plaintiff's ability to take authorized leave; that Plaintiff has been subject to unsubstantiated accusations of misconduct; that Plaintiff has been subject to "onerous reporting requirements . . . not imposed on other similarly situated employees who have not engaged in prior EEO activity;" that Defendant's employees have "impeded Plaintiff's career advancement by downgrading his performance evaluations;" and

that Defendant's employees have "openly exhibited hostility toward Plaintiff by challenging his professionalism, threatening Plaintiff with disciplinary action for unsubstantiated infractions, encouraging Agency clients to complaint about Plaintiff, denying Plaintiff the same workload relief provided to his co-workers, and harassing Plaintiff . . . ." Paper no. 31, at ¶ 4-8.

"For a hostile work environment claim to lie there must be evidence of conduct 'severe or pervasive enough' to create 'an environment that a reasonable person would find hostile or abusive.'" *Von Gunten v. Maryland,* 243 F.3d 858, 870 (4th Cir. 2001) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1983)). In evaluating the hostility of a workplace environment, the court considers the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23.

### *Impeding Plaintiff's Ability To Take Authorized Leave*

The court has already addressed the question of denial of leave. Plaintiff also complains that he was required both to substantiate his accrued leave and to prepare a "work plan" before being granted approval to take his six week leave, but

that other employees were not so required.  To bolster his case,
Plaintiff presents affidavits from four co-workers stating that
they have never been asked to provide either a work plan or
proof of accrued leave before receiving approval of a leave
request.  Paper no. 31, exs. 11-14.

It is doubtful that Plaintiff can prove even a *prima facie*
case for retaliation based on the disputed requirements:
Requiring that an employee substantiate accrued leave with a
recent pay stub and prepare a work plan likely do not constitute
an adverse employment action, but are, at worst, mere
inconveniences.  Even assuming *arguendo* that Plaintiff has
established a *prima facie* case, Defendant, following the
*McDonnell-Douglas* framework, has substantiated a legitimate,
nonretaliatory reason for imposing those requirements, pointing
out that Plaintiff requested 240 hours (six weeks) of leave, an
unusually long leave by any measure, and that discovery did not
unearth evidence that any other employee had ever applied for
more than 80 hours of leave and been approved without
substantiation.  Defendant also provides deposition testimony
from Mrs. McNeill stating that department policy is always to
verify that a leave applicant has accrued the necessary hours,
and that while "[she] will generally approve 40 to 80 hours off
the cuff," she does not approve longer leave without

substantiation.  *See* paper no. 29, ex. 3, at 103-106 (Deposition of Frances McNeill).  Finally, Defendant submits memos to and from other employees indicating that Plaintiff was not the only employee to be required to prepare a work plan before taking leave.  *See* paper no. 36, exs. 7-9.

The *McDonnell-Douglas* burden having shifted back to Plaintiff to show that Defendant's reason is pretextual, Plaintiff has little to offer beyond conclusory allegations. Plaintiff relies principally on Mrs. McNeill's knowledge of the prior EEOC complaints and on his testimony that he provided to her in June and again in August pay stubs showing that he had accrued the necessary hours.  Paper no. 31, ex. 5.  Those facts together simply do not constitute sufficient evidence for a reasonable trier of fact to conclude that Defendant acted with retaliatory intent.  Because Plaintiff presents no evidence that other similarly situated employees -- i.e., employees requesting extended leave -- were not required to substantiate their accrued leave and prepare a work plan, Plaintiff cannot establish the requisite retaliatory intent to sustain this claim.

While not reflected in his answers to interrogatories, Plaintiff also alleges in response to Defendant's motion that on "numerous other occasions," he was required to produce

documentation of accrued leave and prepare work plans before his requests would be considered.  Paper no. 31, at ¶ 10-11. Plaintiff, however, provides no evidence that he was subject to those requirements on any occasion other than when he requested six weeks of leave.  He has therefore failed to establish an adverse employment action with respect to any such "other occasions."

### *False Accusations of Misconduct*

As to the accusations of misconduct, in response to Defendant's motion Plaintiff states only that the accusations were made and that he was "threaten[ed] . . . with disciplinary action for unsubstantiated infractions," and he directs the court to paper no. 31, exs. 9, 10, and 23.  Exs. 9 and 10 are records of customers' telephone calls, and ex. 23 is a memorandum written by Mrs. McNeill in advance of a January 23, 2003 meeting called to discuss some customers' complaints. While the memorandum recites various customers' complaints about Plaintiff's treatment of them or their cases, there is nothing in any of these three exhibits that could lead any reasonable trier of fact to conclude that Plaintiff was accused of misconduct by Defendant.  The memorandum only explains the complaints made by customers against Plaintiff, and does not mention any actual or potential disciplinary action; in fact,

other than reciting the complaints, the memo states only that "I expect that minimal supervisory intervention would be required in your caseload," an action that does not rise to "affect[ing] a term, condition, or benefit of [his] employment," but "merely causes an employee irritation or inconvenience," *Spriggs v. Public Serv. Comm'n of Md.,* 197 F.Supp.2d at 393, and is therefore not actionable.  Plaintiff also does not dispute that Mrs. McNeill offered to destroy all copies of the memorandum and therefore not to include the memorandum in Plaintiff's personnel file, that he was not disciplined as a result of the meeting, and that no reference to the complaints was included in his evaluation for that period.  It is therefore plain that Plaintiff suffered no adverse employment action here.

In his deposition, Plaintiff enumerates other incidents of alleged accusations of misconduct, but because he was not actually disciplined in any way, he fails to state an adverse employment action.  *See, e.g., Lucas v. Cheney,* 821 F.Supp. 374, 376 (D.Md. 1992), *aff'd*, 991 F.2d 790 (4th Cir. 1993) (reprimands do not constitute actionable adverse employment action because "neither the verbal nor the written reprimand became part of [Plaintiff's] final employment record"); *Newman v. Giant Food, Inc.,* 187 F.Supp.2d 524, 529 (D.Md. 2002) (verbal warnings and supervisory questioning not actionable under Title VII).

28

### Reporting Requirements

To substantiate his allegation that he was subject to "onerous reporting requirements . . . not imposed on other similarly situated employees who have not engaged in prior EEO activity," Plaintiff refers the court to paper no. 31, exs. 11-15.  The court has already addressed the issue of leave substantiation and exs. 11-14 *supra.*  Ex. 15 is an affidavit from a co-worker stating that he "routinely trade[s] interviews with my colleagues" and is "not aware of any rule or regulation that requires that employees must seek supervisory approval prior to swapping or trading interviews . . . ."  Plaintiff asserts that he, unlike his colleagues, is required to obtain such approval.  This requirement, even if unevenly applied as alleged by Plaintiff, does not rise beyond the level of an "irritation or inconvenience," and therefore is not actionable. Furthermore, Plaintiff has failed to produce any evidence of the requisite retaliatory intent.  No other "onerous reporting requirements" are alleged or documented.  This allegation therefore fails as well.

### Performance Evaluations

Plaintiff alleges that Defendant's employees "impeded Plaintiff's career advancement by downgrading his performance evaluations," but again fails to cite any supporting evidence,

and in fact manages the opposite, in that the evaluations entered into evidence reflect only ratings of "meets expectations" or better for Plaintiff.  Even if Plaintiff had been rated poorly, "[a] poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment . . . [and] is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 652 (4th Cir. 2002) (quoting *Spears v. Mo. Dep't. of Corr. & Human Res.,* 210 F.3d 850, 854 (8th Cir. 2000)).  As will be shown, Plaintiff fails to allege any adverse employment action as a result of these evaluations.

To support his allegations regarding the evaluations, Plaintiff directs the court first to the entire affidavit of Kathryn Barrett, then to exs. 17 and 18, and finally to ¶ 5 of Ms. Barrett's affidavit for the proposition that "[t]hese evaluations are taken into consideration for promotional opportunities."

Ex. 17 contains a collection of email conversations, reflecting that Plaintiff believes Sue Gordon, a manager, rewrote one of Plaintiff's evaluations without authorization and inserted fabrications; that he met with one Marcia Zvara to

30

discuss the matter; that Mrs. McNeill told him that Ms. Gordon had rewritten his evaluation; that he requested more information regarding the evaluation from Mrs. McNeill; and that he implored Heather Keegan, his union representative, to institute administrative proceedings regarding this evaluation. The emails, while heavy with invective, prove nothing other than that Plaintiff believed he was wronged and pursued the issue with gusto.

Ex. 18 is a single email sent by Plaintiff asserting that he requested the identities of twenty six customers who Mrs. McNeill had earlier indicated to have "called or contacted" her, and asserting that Mrs. McNeill had not responded to him. This exhibit is apparently intended to show that Plaintiff does not believe those complaints to exist, but it does not constitute colorable evidence that they do.

¶ 5 of the Barrett affidavit is particularly unhelpful to Plaintiff's case. In it, Ms. Barrett recites the criteria used to rate candidates for promotion; one of the criteria, and presumably the one to which Plaintiff refers here, is "the content of . . . evaluations . . . *to the extent that they indicated at least a satisfactory performance and adherence to the stated goals of the Department*." (italics added). As noted above, however, Plaintiff can point to no evidence that he has

ever received less than a satisfactory rating on any portion of
any evaluation.   The court has examined the entire Barrett
affidavit and finds no other evidence of anyone having
"downgraded [Plaintiff's] performance evaluations," let alone
for any reason that would provide a basis for action under Title
VII.

In sum, there is no evidence either that Plaintiff's
evaluations reflected poorly on him or that his employment was
adversely affected in any way by any perceived slight contained
therein.

### Other Acts of Retaliatory Hostility

Finally, Plaintiff directs the court to various exhibits in
support of allegations that Defendant's employees have "openly
exhibited hostility toward Plaintiff by challenging his
professionalism (Exhibit 17), threatening Plaintiff with
disciplinary action for unsubstantiated infractions (Exhibit
23), encouraging Agency clients to complaint about Plaintiff
(Exhibits 9, 10), denying Plaintiff the same workload relief
provided to his co-workers (Exhibit 27), and harassing Plaintiff
(Exhibit 5) . . . ."   In his answers to Defendant's
interrogatories, Plaintiff complains of various other allegedly
retaliatory actions by his supervisor, including, *inter alia*,
that he was delegated more work than his peers; that she asked

him for case files she already had, asked him about his work schedule, asked him about his attendance, misplaced his leave slips, verbally reprimanded him and threatened him with disciplinary action, threatened him with written reprimand for refusing to falsify a client record, and refused to provide him documentation regarding one of his performance evaluations; and that an assistant supervisor encouraged a client to send a written complaint about him. *See* Plaintiff's Answers at no. 7. Applying the *Harris* standard, these allegations, even if true, are neither severe nor physically threatening or humiliating, nor can they be said, even taken together, to unreasonably interfere with Plaintiff's work performance, which, as the performance evaluations in evidence show, has been at or above expectation on all occasions. Therefore, they do not constitute conduct "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive," *Von Gunten,* 243 F.3d at 870, and are not actionable under Title VII.

Furthermore, even if Plaintiff were to allege the existence of a "hostile or abusive" work environment, none of the evidence cited by Plaintiff can be interpreted to establish an adverse employment action or a nexus between his protected activity and the hostilities. Despite Plaintiff's allegation, the emails in ex. 17, described *supra,* do not even provide evidence that any

33

employee of Defendant "challeng[ed] his professionalism," but merely reflect an unsupported assertion that one of Plaintiff's performance evaluations was modified by someone who was not supposed to do so; moreover, there is no evidence that the evaluation, even as allegedly modified, caused any harm to Plaintiff, as explained *supra*. The memorandum in ex. 23, also described *supra*, is, quite to the contrary of Plaintiff's allegation, only evidence of several customers' complaints, and does not threaten him with any disciplinary action. Exs. 9 and 10 are two records of customer calls, both dated January 22, 2003;[2] despite Plaintiff's assertion to the contrary, neither provides any evidence that anyone "encourag[ed] Agency clients to complaint about Plaintiff." Ex. 5, as the court has concluded, *supra*, pertains to the issue of leave but contains no evidence of harassment. As Defendant notes in its motion, Plaintiff cites only two instances in which he was assigned more work than his co-workers, hardly a "pervasive" problem rising to the level of an adverse employment action. Plaintiff admits that the assistant supervisor who encouraged a client to complain about him was herself the subject of complaints from

---

[2] The first call record is dated January 22, 2002, but its content makes clear that it is misdated and was recorded in 2003.

34

"[e]verybody in my unit," Gbenoba Deposition at 91, disproving any retaliatory motive.  For all these reasons, Plaintiff has failed to prove a *prima facie* case of retaliation.

Also among the allegations raised in Plaintiff's Answers is the charge that a manager denied him compensatory time approved by his immediate supervisor.  Plaintiff's Answers at no. 7. This alleged denial occurred in December 2001; as noted *supra*, Plaintiff's EEOC complaint only addresses retaliation occurring on or after February 15, 2002, so this allegation is not considered here.

The court will therefore grant summary judgment as to the hostile work environment claims as well, and, thus, as to Defendant's motion in its entirety.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

June 23, 2005